## Case No. 12,544.

### SCOTT v. The PLYMOUTH.

[6 McLean, 463; [1] Newb. 56.]

District Court, D. Michigan. June Term, 1855.

MARITIME LIENS — HOME PORT — LABOR — IN-
TERESTED WITNESS—COMPETENCY.

1. A steam propeller, built by ship-builders at Cleveland, Ohio, under a contract with parties resident in Buffalo, New York. The former place is her home port until after her delivery and her first voyage.

2. Painting a vessel before her completion, and while still in the custody of the ship-builder, is work done at the home port, and creates no lien in favor of the painter on the vessel.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

3. When the interest of a witness is balanced, his testimony is competent.

Libel filed [by Dwight Scott] for the recovery of a bill for painting the propeller while lying in the port of Cleveland, Ohio. It appeared in the proofs that the propeller was built by the firm of Lafronier & Stevenson, boat builders, Cleveland, under contract with George H. Bryant & Co., merchants, Buffalo, N. Y. That a considerable sum had been advanced, and the balance due satisfactorily adjusted before the delivery of the vessel, which formally took place in May, 1854, when she sailed on her first voyage to Buffalo, the libelant interposing no claim, and making no objection, although aware of the delivery of the vessel to Bryant & Co. The libelant was a ship-painter, and was engaged, when he performed the work for the Plymouth, in painting other vessels in the ship-yard of Lafronier & Stevenson, with whom he kept a general account of work and cash payments. The painting of the Plymouth was at the request of Lafronier & Stevenson, and amounted in all to about thirteen hundred dollars, upon which five hundred had been paid, and credited to Lafronier & Stevenson when the propeller was delivered to Bryant & Co. Subsequently, Lafronier & Stevenson failed in business, and the libelant institutes this action against the vessel for the balance due.

Miller & Campbell, for libellant, contended: (1) That there was a maritime lien, inasmuch as the owners resided in Buffalo, and the work was on their vessel. There was no owner until the vessel was finished; and when finished, by the contract she was owned in a foreign port. In support of this proposition, the counsel cited 3 Kent, Comm. 132, 143; Conk. Adm. 56; The Hull of a New Ship [Case No. 6,859]; [Gibbons v. Ogden] 9 Wheat. [22 U. S.] 65. (2) If the libellant had not a maritime lien for the painting, he acquired such lien under the local law of Ohio, which will be enforced in the United States court. Swan, St. Ohio, 185, 551; Conk. Adm. 57; De Lovio v. Boit [Case No. 3,776]; Read v. Hull of a New Brig [Id. 11,609]; The Nestor [Id. 10,126]; Davis v. New Brig [Id. 3,-643]. (3) The allegations of the answer unsupported, because the testimony of Lafronier & Stevenson is incompetent, and should not be received.

Contra, Lathrop & Duffield, who replied: (1) That the ownership of the Plymouth, when the debt was contracted, was in Lafronier & Stevenson; Bryant & Co. having no interest until she was finished and delivered. Mucklow v. Mungles, 1 Taunt. 318; Oldfield v. Lowe, 9 Barn. & C. 73; Simmons v. Swift, 5 Barn. & C. 857; Atkinson v. Bell, 8 Barn. & C. 277; Clarke v. Spence, 4 Adol. & E. 488; Laidler v. Burlinson, 2 Mees. & W. 602; 4 Rawle, 260; 7 Johns. 473; 11 Wend. 135; 6 Pick. 209; 9 Pick. 500. (2) No lien given by the law of Ohio. Jones v. The Commerce, 14 Ohio, 409. (3) The interest of La-

fronier & Stevenson balanced, and therefore competent.

OPINION OF THE COURT. 1. Under the proofs submitted, the libellant acquired no maritime lien. His contract was with Lafronier & Stevenson, to whom alone he gave credit. Bryant & Co., had no property in the vessel until delivered; and the work, for which the suit is instituted, was performed by the libellant before the vessel was delivered. Cleveland was her home port, when in process of construction, and the fact that the libellant kept a general account with Lafronier & Stevenson for painting the various vessels built by them, and that he was engaged in painting other vessels at the same time with the Plymouth, shows, that he looked to them for his payments, and not to the future vessel. Until completed, there was no vessel in existence on which a maritime lien could attach. The material man and his employer resided at Cleveland, and not until after her first voyage was her home port at Buffalo. So far, therefore, the libel sets forth a claim for work and materials, furnished at a home port, and, consequently, created no lien. Abb. Shipp. 143, note.

2. No lien was given by the statutes of Ohio. The mechanics' lien law of that state (Swan, St. c. 69), passed March 11, 1843, creating a lien in favor of mechanics, does not apply to this case, as the pre-requisite acts to perfect the lien, prescribed in the substitute for section 7, have not been complied with. And the statute of 1840, commonly called the "Boat and Vessel Law," according to the construction of the supreme court of Ohio, gives no such lien. Jones v. The Commerce, 14 Ohio, 409.

3. Lafronier & Stevenson, under the circumstances, are considered by the court as competent witnesses. Their interest, in this controversy, is balanced. They are answerable to the libellant for the amount claimed, should he fail in this suit; and should he recover—Bryant & Co., having paid for the propeller according to contract, they would be obligated to refund them the amount recovered here. Libel dismissed.